United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER A. GEIER, | No. C 10-1965 SI (PR) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DR. STREUTKER, D.D.S., | |
| Defendant. | |

## INTRODUCTION

This is a federal civil rights action in which a *pro se* state prisoner alleges that defendant Dr. Streutker, an employee of San Quentin State Prison, retaliated against him in violation of his First Amendment rights. Defendant moves for summary judgment. For the reasons set forth below, defendant's motion is GRANTED.

## BACKGROUND

The undisputed facts are as follows. Plaintiff underwent many dental treatments in January 2009. On June 18, 2009, plaintiff went to a dental appointment where he was seen by defendant Dr. Streutker, who looked at his tooth and determined that it should be extracted. During the appointment, a dental assistant handed Dr. Streutker a stack of at least 10 dental request forms submitted by plaintiff in the last few weeks. Streutker, as per usual practice,

informed plaintiff that each time he submitted a duplicate request, the evaluation process had to start over. In his deposition, plaintiff acknowledges that Streutker, by saying this, was expressing concern about wasting dental resources. He told Streutker that other staff had advised him to submit the slips, and then questioned Streutker's level of authority. Streutker told plaintiff that she was second in authority in the dental staff. She also explained that if he abused the request slip process in the future, he would face administrative action. (Mot. for Summ. J. ("MSJ"), Grigg Decl., Ex. B (Deposition of Christopher A. Geier) at 12–15.)

Plaintiff filed a grievance regarding Streutker's statement and behavior. A dentist who reviewed his grievance wrote the following response:

> Dr. Streutker properly informed you regarding manipulation of the Health Care Request System. After you were triaged and assigned a [dental priority code] which determined your appointment time frame, you continued to place requests. We determined you did not have an urgent need and we provided your care well within the *Perez* timelines. You will not be disciplined for submitting a legitimate request, but you can for circumventing or manipulating the Health Care Services Request and Ducating [*sic*] System.

(MSJ, Ex. C at 3.)

In the operative complaint, plaintiff alleges that Dr. Streutker violated his First Amendment right to seek dental care without retaliation. He alleges that, on June 18, 2009, Dr. Streutker "threatened to have him 'dealt with' via administrative disciplinary action" because Geier had, over a period of weeks, exercised his right to "refile unanswered requests for emergency care" and this had a chilling effect on him.

### STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery, and affidavits demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] Material facts are those that may affect the outcome of

---

[1] FRCP 56 has been amended since defendants filed this motion for summary judgment. The Advisory Committee Notes on the 2010 Amendments state, in relevant part, that "[t]he standard for granting summary judgment remains unchanged," but the word "issue" has been replaced with "dispute" to "better reflect[] the focus of a summary-judgment determination." Fed. R. Civ. P. 56 advisory committee's note.

the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). A "genuine issue for trial" exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 n.4.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *Id.*

## DISCUSSION

**I.   Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2009) (footnote omitted).  Plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's actions. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997).  As to the fourth element, i.e., whether the inmate was chilled from exercising his First Amendment rights, a prisoner-plaintiff may allege that he suffered more than minimal harm – since such harm almost always have a chilling effect. *Rhodes*, 408 F.3d at 567–68 n.11.  That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough.  *Id.* at 569.  The proper analysis is whether a person of ordinary firmness would be chilled or silenced from exercising future First Amendment rights. *Id.*

Reading the facts in the light most favorable to plaintiff, the Court concludes that plaintiff has not pointed to evidence precluding summary judgment.  *See Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Specifically, plaintiff has not shown a triable issue of fact that Streutker's statements and behavior constituted retaliation.  As to the first three elements of a retaliation claim, the undisputed facts show that defendant was not taking, or threatening to take, an adverse action against plaintiff.  Rather, she was informing him, as she would inform any inmate in a similar position, that misuse of the slip notification system creates a delay in treatment and unnecessary work for staff.  Plaintiff admitted at his deposition that he took this as Streutker's meaning.  Plaintiff has not shown that her statements would chill a person of ordinary firmness or that the statement did not have a legitimate correctional goal.  Specifically, it was made clear

4

to plaintiff he could continue to file slip notifications for legitimate grievances. Only an abuse of that system would result in discipline of some sort. Having been informed by a person in authority such as defendant, he would now be able to understand how to use, rather than misuse the system. On such undisputed facts, plaintiff has not shown that a triable issue of fact exists that show that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's actions. The evidence shows that plaintiff was encouraged, rather than dissuaded from, filing legitimate slip notifications, and was only dissuaded from abusing the process. On such a record, defendant's motion for summary judgment is GRANTED.

## II.   Qualified Immunity

Defendants contend that they are entitled to qualified immunity from plaintiff's claims. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under *Saucier v. Katz*, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543

U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205–06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205. Although the *Saucier* sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 236.

As to the first prong, for the reasons discussed above, plaintiff has not shown that defendant violated a constitutional right. As to the second prong, even if plaintiff had shown that defendant had violated a constitutional right, defendant has presented evidence that she reasonably believed that she was not impinging on plaintiff's rights. Rather, the record shows that defendant was simply informing plaintiff how to use the notification system properly, and that abuse of the system creates unnecessary work and delays. Accordingly, defendant is entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Docket No. 50) is GRANTED. The Clerk shall enter judgment in favor of defendant, terminate Docket No. 50, and close the file.

**IT IS SO ORDERED**.

DATED: May 19, 2012

_____
SUSAN ILLSTON
United States District Judge